Good morning. My name is Kyle Israel, law firm of Israel and Garrity in Phoenix, Arizona. May it please the court. This is a case about an exception to the Federal Tort Claims Act that the government has brought, the discretionary function exception. It doesn't apply for two reasons. Number one, there's a mandatory law that provides that action should be taken in a certain circumstance, which takes it out of the realm of discretion. Are you talking about the regulation 36 CFR 212? Correct. That's correct, Your Honor. Tell me why that mandates it as opposed to discretion. Because as I read it, it says if a responsible official determines, is your position that that determination was made that the motor vehicle use is directly causing or will directly cause considerable adverse effects? Yes, Your Honor. That is the one portion that allows for discretion. The discretion is with respect to the dangerousness. Weeks before this occurred, the Forest Service was notified in text and with photographs of boulders rolling down onto Mount Eldon. And the forest official who received that testified in this case that there was no clearer indication of an imminent danger of more boulders rolling down than when you see boulders on the road. But he in fact said there was no imminent danger. He said, looking at the photograph, I assume you're talking about Mr. Monin. Correct. And according to his depo testimony, he said from looking at the photograph, he didn't see any imminent danger. And when he went there after the accident, he still didn't see any imminent danger. So he did not make a determination that there was a problem. And so the question is whether in the record there's a finding or a determination by the responsible official, I'm not sure who that is, the responsible official that motor vehicle use will directly cause considerable adverse effects. So what finding are you relying on? I'm relying on his testimony that preceded that, which was on examination by his counsel. First of all, of the warning which I just spoke of. Second of all, of his indication that if that is the case, that is an imminent danger. Third. So you're saying his answer to a hypothetical question, which despite the fact that he said there was no imminent danger based on his own review, is enough. Is that your position? Yes. I'm saying he contradicted himself effectively because he had right in front of him the exact situation that he said is an imminent danger, and later testified upon my examination that in a case of an imminent danger, even not even talking about the statute, the road should be closed immediately. And later he testified. Counsel, Judge Gould, if I could ask you a question. Sure. Doesn't the Forest Service have to make a balance between danger to individuals in their use of the road on the one hand, and the benefits for recreation or for commerce of letting people traverse it? Your Honor, with respect to the statute, the statute does not provide for that balancing. The statute says if a considerable adverse . . . You mean regulation, or is there a statute that we're not looking at? Sorry. 36 CFR 21252B2. All right. Okay. But that regulation, to continue on my line of thought, when we're trying to assess whether there's a considerable risk, doesn't that involve some balancing? I mean, there's always going to be some risk anytime you're next to a mountain. Well, if we want to . . . You can have rock falls. Sure. And in this case, there was a heavy rain, and there was boulders that had rolled down, and they were told there would be more boulders rolling down. Okay. So you could probably go drive down a Forest Service road almost anywhere and see boulders on the side of the road if it's in a mountainous area. This was a specifically noted acute danger in this area where the users who provided photographical evidence said, the next rainfall, this is going to happen again, which it did. But I'll get back to your original question, which was, does the regulation allow for the balancing of the discretionary function level policy analyses that we see in the cases, which are political, social, and economic? The regulation itself states, considerable adverse conditions, you shall close the road. It does not say after reviewing other policies or other protocols. Does there a definite . . . My question was whether the balance comes in in deciding what's considerable. Yes, I would think so. And so both sides have used the term imminent danger as kind of a better explanation of what considerable adverse effects is. And we have a forest official saying, boulders in the road is an imminent danger of more rolling down in that area. So we have someone admitting that situation, which we had here, is an imminent danger. But given that he said, he went on to say he didn't see any imminent danger on Road 557 in this particular situation, and given that we're not allowed to make a determination of Federal agents even when they're wrong, I guess I still am asking where there's a specific requirement that he should have, he had, he was forced to make or required to make a different finding. First of all, I don't think he should be allowed to contradict his own testimony when he's already stated in this situation. He never said that it was an imminent danger in that particular road. And in fact, he said before when he looked at the photographic evidence and after when he actually visited the road. So he was completely consistent about his assessment of whether there was considerable adverse effect on that particular road based on the evidence before him. Well, I understand that's what he said afterwards. But I'll go ahead and move on. And by the way, the rest of the regulation says you shall immediately close the road. So the question is whether or not that regulation was triggered. And I understand the questions, and I appreciate those. And I'll move on to the second reason why the, unless there's more questions. Well, just to close the loop on this first one, or I think it's still the first one. So he gets some emails, an email photo the night before. He says, I'll go check it out tomorrow, is my understanding of the record, right? That's actually not correct. Okay. A month or more before, he gets a multi-page email with multiple photos. I understand that. And that's what we've been discussing now. But as I understand it, there was another one specific to this incident. Correct. Where he got, he received photos the night before. He says, I'll go check it out in the morning, is when your client got injured. Then the Forest Service shows up, and they immediately close the road after the injury. Oh, that's correct, except for the photos part. They didn't receive photos the night before. I see. They just received the email on the 9th. That's correct. Okay. Okay. So is it your position that there was any, you've made the argument for why you think there was a determination made earlier, a month prior. And by the way, if there was a determination made a month prior, wouldn't the intervening month have changed that? Or is your position, no, the determination was made and that negligence still stands? The regulation requires that you immediately close the road until the danger is mitigated and prevented from happening again. They could have done that in any way they wanted to, and it might have taken them a few days. It might have taken them who knows how long. But there were specific boulders up on this hill that ultimately later came down a month or so later. Where again was the determination made where the responsible official made that determination? You cited Mr. Monin's testimony at his depot where he responded to a hypothetical question. But where was the determination actually made? What does the record show? My, our position is, is that when he was asked whether there is any, whether he was given a notice of the situation, obviously he agreed. He had received the notice and the photos. And then he was asked if there was any better example of an imminent danger to more boulders rolling down the road, into the road, than the fact that there are already boulders in the road. He indicated, yes, that was the best indication, excerpt of record 432. So he should have made the determination is what you're saying. He should have made the determination, but we don't have evidence that he made it. Yes. And the Forest Service made that determination when they closed the road right after the accident, said for public safety reasons, the U.S. government. But that was a month prior, so it was a different circumstance. And that's what I'm troubled with is the weight of your argument is that any time the Forest Service receives a complaint about something being potentially harmful, that binds them for the foreseeable future. So how do you navigate that? No. If they determine that this is a situation that provides or risks further adverse effects or imminent danger, which is a situation that Mr. Monin admitted is this type of situation, then the regulation says close the road until you've taken care of it and stopped it from happening again. That's a negligence question whether or not they did that or not. The question of whether they had the right to act or not act, whether this required them to act is the question before us. And so finally, with five seconds to go. Well, but, and maybe we'll indulge you with a little bit to answer my question. Or I guess maybe you want to reserve. But in any event, I'll ask the question, which is, again, even if the determination was made a month prior and they had cleared that danger, don't we have, wouldn't we still, even if we were to credit that, wouldn't we still have to find some causation to the boulders that fell down, which was from intervening rains that occurred and the Forest Service was notified the night before on the 9th? So I just, it seems like there's a lot of problems. Well, let me explain that. If they had cleared the danger that they were warned about a month earlier, which included the boulders that were uphill and ultimately rolled down and caused the injury, we wouldn't be here today. I'm not talking about the night before. You've used your time. We'll see if the panel has any questions after hearing from opposing counsel. Thank you so much. Good morning. May it please the Court. My name is Lawrence G. Tinsley, Jr. I'm an assistant United States attorney from Phoenix, Arizona. I represent the United States. And, Your Honors, this is a case in which the appellant engages in wishful thinking and claims that there is no weighing of social or economic policy when the record proves otherwise. The testimony from three Forest Service officials demonstrates that they weighed social and economic policy when they were notified of an issue in July, which was actually two months before the September accident. Do you think they have to show that they actually weighed these issues? I thought in our decision in Morales we said that the actions just have to be susceptible to a policy analysis. Yes, Your Honor. Susceptibility of policy analysis is part of the test under the discretionary function exception. But the record in this case clearly indicates that all three Forest Service officials who looked at this issue determined that there would be a social impact on recreational users, bikers, campers, hunters, and also an economic impact on the cell phone tower businesses at the top of the list, tens of thousands of cell phone users. So those determinations were made whether or not you get to the issue of whether it's susceptible of policy analysis. So Mr. Burns makes he relies on the Forest Service, another Forest Service regulation or a manual, 7733. That one seems to specifically incorporate these other calculations and findings. And I guess going back to Judge Gould's initial question, do you think that those findings are found, similarly found in, or excuse me, the factors are found in the regulation 22.52, or does that just, are those factors inherent in the discretionary function test? They are inherent within the discretionary function test. So regardless of what the regulation says, even if the regulation doesn't give you any specific right to consider these other factors, the discretionary function test requires that the court take consideration of them. Not only is it part of the discretionary function test, whether social, economic, and political considerations are considered, but in this case we have the policies and procedures, the regulations to the Forest Service manual that specifically tell them to weigh social, environmental, and economic impacts. But the regulation says that if the responsible official makes a specified determination, then the road has to immediately be closed. Now, if a responsible official had made the determination in 212.52, wouldn't the, would the official have any discretion as to whether or not to immediately close that road? He would have that discretion, Judge, in making that determination. Right. I said if a determination were made. So the responsible official, we're not sure who that is, makes a determination. And the lower level employees would be required to immediately close that road, right? That wouldn't include a weighing. Well, Your Honor, we believe that the CFR that is cited doesn't actually apply to the circumstance, because what it is saying is if the responsible Forest Service official makes a determination that motor vehicle use is causing a considerable adverse effect, that is when they shall close the road. It's specifying whether motor vehicle use is at issue. Well, but doesn't that, I mean, I understand your point, but still, you could be required to make that finding. And presumably, motor vehicle use, you don't just decide that in a vacuum. If you've got bad road conditions, I guess the problem I have with your argument is say you've got boulders that are ready to fall. Everybody goes out and says, oh, my gosh, this is really dangerous. And then you go back and say, well, geez, it's Memorial Day weekend. We're going to make people so upset if we don't keep these roads open. And then they fall and they hurt somebody. Wouldn't you then be liable for not closing the road? Or would you come into court and say, hey, it was a really high use period. We couldn't make people unhappy. We needed to keep it open for other factors. And I appreciate Your Honor's hypothetical. But the applicable question here is whether there are facts that establish that the decision was not based on social, economic, or political policy. But under my hypothetical, it would be based on social policies, wouldn't it? It seems to me that's more of a negligence issue. Did they exercise reasonable care? And that goes more to the merits. Well, but that's what they're arguing here. Pardon me? That's what Burns is arguing here, is that you were negligent in not closing the road. We understand that that is the argument, the argument being negligence. But we don't reach that issue because we are here considering the discretionary function exception and whether there are facts that suggest that social and economic and political policy were not considered. And in this case, they certainly were considered. I'm looking at the Chad case, Chad v. USA, dealing with the problematic goat that unfortunately killed someone. And in that matter, the whole issue of what actions should have been taken go more to the issue of negligence as opposed to the issue before the court at that time, whether there was a lack of evidence of social and economic considerations, which occurred both in the Chad case and in this matter. The issue, we believe, is that there was also no imminent danger presented by the boulders on the side of the road in July because That seems to be, I mean, no one was injured. So that would support your conclusion, wouldn't it? It does support our conclusion. And not only that, Judge, the boulders were removed in July, so there was no notice for a two-month period of any imminent danger. And then when the subsequent rockfall occurred in September, the Forest Service did not have notice of that event until the morning of the injury. And the notice came in around that time. Well, that's not totally accurate. You had notice the night before, is that correct? We did not have notice. The email was sent, but it was not opened or read until 7 a.m. the next business day. And so there was no evaluation that occurred by Mike Bathan or other Forest Service officials until around the time that the accident occurred. By that time, when notice was finally given to the Forest Service, the accident had already happened. And it happened, by the way, because of the manipulation of those boulders by the appellant and his work crew, thus seemingly triggering the second fall, the third fall. I was struck by that, that he sort of tried to get into some self-help, I guess, and I wondered what role that played. Is that unusual for a crew to go out there and try and do a private party to try and do that on their own? We believe it's unusual and inappropriate. They had no special training. They had no special equipment. What they tried to do is hook a rope to the bumper of one of their vehicles and try to move the boulder out of the way. And we believe that possibly triggered the third rock fall, although the record was never developed on that point because we were dealing with this issue. What if you'd received the email and this had happened and you just kind of said, hey, I'm busy, we've got other projects going on, and they hadn't gone out to check it out for a couple of weeks and then this injury would happen? Would you still be in here arguing that the Forest Service wasn't liable here? We would say that under the discretionary function exception, if it is susceptible of policy analysis, social and economic and environmental impacts, then it would still not bear liability. It would be immunized. Can you give me an example of a decision that the Forest Service would make that isn't susceptible to those considerations? I suppose one issue could be once an accident occurs, as occurred in this matter, when they have to preserve evidence or preserve the scene, that is when it is appropriate to close the road for that sort of protection. But that's a changed circumstance. So you're basically asking for, you know, there has to be one injury before this nondiscretionary duty kicks in. As long as they've evaluated the condition, as long as they've decided, yeah, we see that rock falls can occur throughout the forest, any forest, any point in the forest, and they are asked to evaluate it. There's no more basic function for the Forest Service officials to do than to evaluate it and weigh the interests, weigh whether it's going to impact campers, recreational users, and the businesses at the top of the cliff. In an emergency situation, such as occurred afterwards, when they want to preserve evidence, that might be an indication. That might be a time where they can take action immediately. But in this matter, Your Honor, and I see that I'm virtually out of time, if not out of time, that was a changed circumstance. And under the case law, the Shansky case that I'm quite familiar with and the Matisse case from the Ninth Circuit District Court, you don't ignore the prior weighing of social and economic factors once you make a change to the condition. Okay, you're over time, actually. Thank you very much. Okay. Do we have any questions for Mr. Burns, counsel? I think I'd like to let the appellant argue some rebuttal to hear. Okay, we'll give you a minute. Thank you, and I'll be as quick as I can be. The government says they weighed all of these policies. If you look at Mr. Mona's deposition, which we've cited in the record, he said first, under my questions, they did none of that in July. They didn't weigh anything. They didn't look at anything in terms of policy, competing policies. He later, on leading questions, said, yes, we did this, we did this, we did this, another contradiction of his. They said the boulders were removed in July. Those were removed off the road, not the ones uphill that were warned of pending, falling on the next rain is what they were told. Those were not removed. That's what rolled over on Seth Burns. They say Mr. Burns caused the boulder to roll. I've heard this multiple times. There's nothing in the record or in the evidence that says that, nothing. It's been stated in multiple levels with no citation to the record. Look at the Duke v. Department of Agriculture case. Camper was brain injured by a rolling boulder where the Department of Agriculture was specifically warned of this happening in the future. They argued general policies, a Forest Service manual without an acute danger analysis, and the Court said no. That doesn't rise to the level of discretionary function exception policy analysis. There was no good reason not to act. And that's the same case here. Thank you. All right. I thank both parties for their argument. The case of Seth Burns v. United States is submitted.
judges: Gould, Ikuta, Nelson